County of Allegheny, Petitioner *v.* Evelyn M. Wilcox et al., Respondents.

Allegheny County Court of Common Pleas et al., Petitioners *v.* Commonwealth of Pennsylvania, Pennsylvania Human Relations Commission et al., Respondents.

Argued March 1, 1983, before President Judge CRUMLISH, JR. and Judges ROGERS, BLATT, WILLIAMS, JR. and DOYLE.

*James H. McLean*, County Solicitor, with him *David J. Greenberg*, Assistant County Solicitor, for petitioner, County of Allegheny.

*Thomas J. Dempsey*, for petitioners, Court of Common Pleas of Allegheny County and Minor Judiciary Courts of Allegheny County.

*Michael L. Foreman*, Assistant General Counsel, with him *Ellen M. Doyle*, Assistant General Counsel, for respondents, Evelyn M. Wilcox et al.

OPINION BY JUDGE BLATT, August 29, 1983:

In these consolidated appeals, the petitioners, the County of Allegheny (County) and the Allegheny County Court of Common Pleas and its minor judiciary (Court of Common Pleas) challenge an adjudication of the Pennsylvania Human Relations Commission (Commission). The Commission found that the petitioners had violated Section 5(a) of the Pennsylvania Human Relations Act (PHRA)[1] which prohibits "any employer because of the ... sex ... of any individual to ... discriminate against such individual with respect to compensation ...", and it entered an order directing the petitioners (1) to immediately upgrade the wages of all female district justice secretaries[2] (secretaries) employed since April of 1973[3] to the level received by male district justice night court clerks[4] (night clerks) and, (2) to pay said secretaries backpay equal to the difference between their wages and those made by the night clerks from April of 1973 to the effective date of the upgrading.

The dispute here concerned commenced when the female secretaries filed complaints before the Commission contending, *inter alia*, that they were the victims

---

[1] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §955(a).

[2] The secretaries are and were predominantly female.

[3] This date represents the inception of the night clerk program.

[4] The night clerks were all male and are predominantly so now.

of sexual discrimination with respect to compensation because male night clerks received greater compensation for substantially the same work. The evidence adduced at the hearing and accepted by the Commission in its findings indicates that each female secretary applied for employment with her respective District Justice who in turn had recommended her for appointment to the President Judge of the Court of Common Pleas. The County had then paid the salary of each such secretary, but her work hours, location, and general duties had been controlled by the Court of Common Pleas, the Court Administrator, and the individual District Justice to whom she was assigned. Subsequent to the employment of the secretaries, the Court of Common Pleas submitted an application to the Governor's Justice Commission for a subgrant to operate a night and weekend minor court. This application was prepared by the Court Administrator, named the County's Controller as financial officer, was reviewed by the County Commissioners, and was signed by the President Judge. The application was accepted and provisions were made for the appointment of nine night clerks and the payment of their salaries, which at the program's inception allegedly were 39% more than that of the secretaries, and in 1978 was 15% more. It was set by the President Judge after conferring with the Court Administrator, and although qualified women applied for the appointment, including one of the secretaries, nine males were hired. The reason given was that the work of a night clerk was too dangerous for women because of the "suspect" nature of the citizenry involved and the absence of adequate police protection during night court. Some 19 months after the first complaint was filed before the Commission, however, a woman was hired as a night clerk on or about November 24, 1975, and since then two more women have been hired.

Our scope of review is limited, of course, to a determination of whether or not the Commission's adjudication was in accordance with the law and if there is substantial evidence in the record to support its findings. *Philadelphia Electric Co. v. Pennsylvania Human Relations Commission*, 68 Pa. Commonwealth Ct. 212, 448 A.2d 701 (1982).

The petitioners argue here that no substantial evidence exists which would warrant a finding of sex discrimination with regard to compensation under Section 5(a) of the Act. Our close examination of the record, however, reveals ample testimony and evidence to support the Commission's findings that:

> The duties of a district justice secretary were far more numerous than those of a night court clerk and, generally, more complex. Moreover, there were no duties that were performed by a night court clerk that were not performed by a district justice secretary. Yet, the salary for the district justice secretary position was substantially less than that for night court clerk.
>
> ....
>
> [T]he duties performed by the district justice secretaries were greater than those performed by the night court clerks in terms of skill, effort and responsibility.

And, in view of these well-supported findings, it would seem obvious that there can be no appreciable variation in skill, responsibility or effort between the jobs which will justify the differential. *See Laffey v. Northwest Airlines, Inc.*, 567 F.2d 429 (D.C. Cir. 1976). The petitioners, however, specifically the Common Pleas Court, however, maintain that the differential is justifiable in that the night clerks work with greater security risks and under a more onerous schedule, including working nights, weekends and holidays.

The Commission recognized in its adjudication "that a non-discriminatory shift differential[5] can be a justification for unequal pay." This statement, however, was conditioned upon the employer's having established the absence of discrimination. Here, the Commission found that the petitioner had failed to sustain this burden, noting that:

> First, the best evidence available to us indicates that a normal night shift differential is one to three percent ... while the differential here was substantially [39% to 15%] greater.... Second, district justice secretaries were not given extra compensation when they were required to work nights, weekends, or holidays.... Third, the Court's Administrator did not formally develop a night differential and then apply that to the district justice secretary salary in order to determine the night court clerk salary.

Additionally, we would note that the record indicates that the County did not maintain a pay differential for its other employees who worked at night as compared to its daytime workers and that this included county employees working for the courts.

Concerning the petitioners' attempt to justify the differential on the basis of the safety of the working conditions, we note the Commission's observation that:

> [W]e do not feel that the night court clerk position involves security risks that are appreciably greater than those incurred by district justice secretaries; in fact, in some respects, the district justice secretary position involves greater risks.... [T]he evidence does indicate that in the event of ... a [physical threat] problem, the night court clerks had greater access to police assistance than district justice secretaries.

---

[5] *See Corning Glass Works v. Brennan*, 417 U.S. 188 (1974).

Moreover, the record further indicates that night clerks usually work in pairs with a district justice present, while secretaries often work alone and without supervision.

We believe, therefore, that the Commission did not err in concluding that the petitioners violated Section 5(a) of the PHRA with regard to compensation.[6]

The petitioners also argue that the Commission erred in awarding class relief to persons unnamed but described in the complaints and that class actions are impermissible under the Act. In *Pennsylvania Human Relations Commission v. Freeport Area School District,* 467 Pa. 522, 530, 359 A.2d 724, 728 (1976) our Supreme Court held that the

> PHRC may order affirmative relief for persons other than the named complaint [sic] when (1) the complainant alleges that such other persons have been affected by the alleged discriminatory practice and (2) such other persons entitled to relief may be described with specificity.

Our review of the record here, however, indicates that both conditions of this test have been satisfied.

The petitioners likewise challenge the Commission's failure to give certain persons, who were granted relief under its order notice of the pendency of the actions before it. Any prejudice, however, which was caused by this omission runs to the so-called class members,

---

[6] The fact that three women have been hired as night clerks since 1975 means that there might not now be any discrimination with regard to *hiring* for said position. This fact does not, however, erode the efficacy of the instant action, which considers only whether or not there was discrimination under Section 5(a) of the PHRA regarding the *compensation paid* and continuing to be paid to the secretaries.

and if this was an error, it was harmless and will not, in itself, warrant a denial of relief.[7] *See Equal Employment Opportunity Commission v. Kimberly-Clark Corp.*, 511 F.2d 1352 (6th Cir. 1975), *cert. denied*, 423 U.S. 994 (1975); *Choate v. Caterpillar Tractor Co.*, 402 F.2d 357 (7th Cir. 1968).

At this point the petitioners' arguments diverge.

The County argues next that there was no evidence before the Commission adequate to establish any intent on its part to discriminate with regard to the secretaries' compensation and alleges that it did not participate in the selection, appointment, or control of the night clerks or in determining that the secretaries should be paid less than the night clerks or that they should be predominantly female. The record, however, supports the Commission's findings that "[b]oth district justice secretaries and the night court clerks are paid by the County ... and their salaries are approved by the County Salary Board, which is composed of three County Commissioners, the County Controller, and the Court's President Judge." And such facts could warrant a conclusion by the Commission that the County was a party to the discrimination here involved.

The Court of Common Pleas argues next that the PHRA does not apply to it because it is not an "employer" covered by the PHRA. Section 5(a) of the PHRA prohibits any "employer" to discriminate, and Section 4(b) of the PHRA, 43 P.S. §954(b) states in pertinent part that:

> The term "employer" includes the Commonwealth or any political subdivision or board,

_____

[7] Additionally, we note that the Equal Employment Opportunity Commission, the Commission's federal counterpart, need not comply with the federal class action certification rules. *General Telephone Company of the Northwest, Inc. v. Equal Employment Opportunity Commission*, 446 U.S. 318 (1980).

> department, commission or school district thereof *and* any person employing four or more persons within the Commonwealth, but except as hereinafter provided, does not include religious, fraternal, charitable or sectarian corporations or associations, except such corporations or associations supported, in whole or in part, by governmental appropriations. (Emphasis added.)

The Court of Common Pleas argues that this definition was not intended to include it because there is no specific reference to courts nor even is there a "catch-all" category such as "or other instrumentality thereof", which is used in Section 301 of the Public Employe Relations Act, Act of July 23, 1970, P.L. 563, 43 P.S. §1101.301. The Commission, on the other hand, argues that the language of Section 4(b), which is addressed to public employers, is not determinative, and notes that it found the Court of Common Pleas to be under the PHRA because said court "employ[ed] four or more persons within the Commonwealth." The Commission argues, therefore, that, because Section 4(b) specifically excepts certain employers from the PHRA's ambit and the Court of Common Pleas is not so excepted, this indicates a legislative intent that the court be subject to the PHRA, and we agree.

The Court of Common Pleas further argues that, if the PHRA is applied to the courts in situations such as this, it is unconstitutional because it violates the doctrine of separation of powers, by affording the executive and legislative branches control and the potential to intrude upon the judicial branch of the government. In *United States v. Nixon*, 418 U.S. 683 (1974), however, the United States Supreme Court recognized that a branch of government alleging that it has been intruded upon by another in violation of the separation of powers doctrine must show how its authority

has been encumbered. *See also, Commonwealth ex rel. Bradley v. Pennsylvania Labor Relations Board*, 479 Pa. 440, 388 A.2d 736 (1978). And under the *facts of the case before us*, we do not believe that the Court of Common Pleas has carried its burden of establishing that the PHRA is unconstitutional. The Commission's order does not direct the Court of Common Pleas to hire anyone into confidential employee positions or to fire such an employee. *See Ellenbogen v. County of Allegheny*, 479 Pa. 429, 388 A.2d 730 (1978); *Beckert v. American Federation of State, County and Municipal Employees*, 56 Pa. Commonwealth Ct. 572, 425 A.2d 859 (1981). Rather, the Commission's order merely requires the *upgrading* or *equalization* of pay, and it is clear that the courts can compel the appropriate legislative body to appropriate sums which are reasonably necessary for their proper operation and administration. *Commonwealth ex rel. Carroll v. Tate*, 442 Pa. 45, 274 A.2d 193 (1971), *cert. denied*, 402 U.S. 974 (1971). We do not find, therefore, under the facts presented, any impairment of the independence or function of the Court of Common Pleas.[8]

The Court of Common Pleas also contends that it is immune from actions commenced under the PHRA by virtue of sovereign immunity, absolute state immunity, judicial immunity or qualified state immunity. Curiously, as the Commission points out, the brief of

---

[8] We reject, as did the Commission, the Court of Common Pleas' contention that they cannot be a respondent in this PHRA action because it would be called upon to enforce an order against itself. The Commission noted that several alternative procedures exist; namely, a change of venue or the appointment of an out-of-county judge. The Commission further noted that the court of common pleas' action or inaction would be reviewable and states that in any event, the Commission looks primarily to the Commonwealth Court for enforcement of its orders, not to courts of common pleas.

the Court of Common Pleas is wholly devoid of authority for its immunity theory. And this Court will not and may not act as the counsel for the Court of Common Pleas or assume its burden of developing its argument. In its brief it has failed to guide us as to the applicable law, and we are unable to exercise our review of this issue effectively. We must, therefore, reject this argument. *See Commonwealth v. Jackson*, 494 Pa. 457, 431 A.2d 944 (1981); *A.M. Skier Agency, Inc. v. Pocono Futures, Inc.*,     Pa. Superior Ct.    , 454 A.2d 637 (1982); *Commonwealth v. Sanford*, 299 Pa. Superior Ct. 64, 445 A.2d 149 (1982).

The next assertion of error below which is put forward by the Court of Common Pleas points out that the Office of General Counsel (OGC) for the Commission acted both as counsel for the complainant secretaries and as counsel for the Commission acting in its quasi-judicial capacity. In essence, this represents a due process challenge in that the Commission's action was invalid, and it appears that an OGC staff attorney from one regional office represented the complainants and an OGC staff attorney from another district served as legal advisor to the hearing panel.

We have recognized that such procedures will be subject to close scrutiny. *Pennsylvania Human Relations Commission v. Thorp, Reed & Armstrong*, 25 Pa. Commonwealth Ct. 295, 361 A.2d 497 (1976). There, however, we upheld this type of procedure by the Commission absent indicia of bias or unfairness. And, in the case at hand, our close review of the record reveals no bias or unfairness toward the interests of the Court of Common Pleas, nor has it in its brief cited any instances where the legal advisor acted in a biased or unfair manner toward it. *Compare Thorp, Reed & Armstrong; In Re: Appeal of Redo*, 42 Pa. Commonwealth Ct. 468, 401 A.2d 394 (1979); *Bruteyn Appeal*, 32 Pa. Commonwealth Ct. 541, 380 A.2d 497 (1977)

*with Horn v. Township of Hilltown*, 461 Pa. 745, 337 A.2d 858 (1975).

The Court of Common Pleas argues finally that there can be no liability assessed against it because the doctrine of respondeat superior does not apply under the PHRA. We agree with the Commission, however, that the standard of proof under the PHRA is analogous to that in Title VII cases under the Civil Rights Act of 1964, 42 U.S.C. §2000e *et seq.*, and that it is clear that in such cases the doctrine of respondeat superior does apply. *Miller v. Bank of America*, 600 F.2d 211 (9th Cir. 1979); *Young v. Southwestern Savings and Loan Association*, 509 F.2d 140 (5th Cir. 1975); *Anderson v. Methodist Evangelical Hospital*, 464 F.2d 723 (6th Cir. 1972); *see Flowers v. Crouch-Walker Corp.*, 552 F.2d 1277 (7th Cir. 1977). The rationale in the above-cited cases is persuasive, and, considering the evil to be remedied[9] by the PHRA, we believe that our legislature intended that the doctrine of respondeat superior should apply to actions under it. Otherwise, a loophole would be created in the statute, *Miller*, in that most employers today are corporate, quasi-corporate, partnerships or entities capable of maintaining agency relationships, and would be able to emasculate the PHRA by maintaining that they are not responsible for acts of their agents.

For the foregoing reasons, therefore, we will affirm the Commission's order.

ORDER

AND Now, this 29th day of August, 1983, the order of the Pennsylvania Human Relations Commission in the above-captioned matter is hereby affirmed.

---

[9] Section 1921(c)(3) of the Statutory Construction Act of 1972, 1 Pa. C. S. §1921(c)(3).