**In re APPLICATION OF CONSOLIDATED COAL SALES COMPANY, et al. to Convene a State Mining Commission to determine underlying and adjacent support coal to be left in place, to assess damages, and other matters under lands located in Fallowfield Township, Washington County, Pennsylvania relative to a portion of the Mon/Fayette Expressway, S.R. 0043.**

**Parties in Interest Consolidation Coal Sales Company, DuPech, Inc., Consolidation Coal Company, and Consol Pennsylvania Coal Company, corporations, and Pennsylvania Turnpike Commission, a Commonwealth instrumentality.**

**Appeal of Consolidated Coal Sales Company, DuPech, Inc., Consolidated Coal Company, and Consol Pennsylvania Coal Company, corporations.**

Commonwealth Court of Pennsylvania.

Argued May 8, 2002.
Decided July 10, 2002.

David B. Fawcett, Pittsburgh, for appellants.

Samuel P. Kamin, Pittsburgh, for appellees.

BEFORE: COLINS, President Judge, McGINLEY, Judge, SMITH–RIBNER, Judge, PELLEGRINI, Judge, LEADBETTER, Judge, SIMPSON, Judge, and LEAVITT, Judge.

OPINION BY President Judge COLINS.

Consolidation Coal Sales Company, Du-Pech, Inc., Consolidation Coal Company, and Consol Pennsylvania Coal Company (hereinafter referred to as Appellants) appeal from the December 5, 2001 order, as amended by the December 21, 2001 order of President Judge Thomas D. Gladden (Judge Gladden) of the Court of Common Pleas of Washington County (Common Pleas Court), appointing Senior Judge Thomas J. Terputac (Judge Terputac) to act in his stead as a member of the State Mining Commission.

On July 30, 2001, Appellants filed a petition to convene the State Mining Commission (the Mining Commission). Appellants' petition averred that the construction of the Mon Fayette Expressway (MFX) required the Pennsylvania Turnpike Commission (Turnpike Commission, hereinafter Appellee) to acquire coal underlying the highway. Over the Turnpike Commission's objections, Appellants claimed that they own the coal underlying the MFX, and that said underlying coal was necessary to support the expressway.

On August 20, 2001, the Turnpike Commission filed its response, preliminary objections and new matter to Appellants' petition to convene the State Mining Commission. On September 14, 2001, Appellants filed a reply to the Turnpike Commission's new matter. Thereafter, at the Turnpike Commission's suggestion, a status conference was held on October 9, 2001 before Judge Terputac to address several preliminary issues, including the

composition of the Mining Commission. At the status conference, Appellants argued that Judge Terputac lacked jurisdiction to hear matters related to the Mining Commission and that pursuant to the law known as the State Mining Commission Act (SMC Act),[1] President Judge Gladden did not have authority to appoint Judge Terputac to sit in his stead as a member of the convened Mining Commission. The parties presented legal memoranda and oral argument on this issue and ultimately stipulated that President Judge Gladden would enter an order assigning either himself or Judge Terputac as chairman of the Mining Commission.

By an order dated December 5, 2001, President Judge Gladden affirmed his appointment of Senior Judge Terputac to act in his place as a member of the Mining Commission, and subsequently, on December 21, 2001, amended this order by certifying it for immediate interlocutory appeal. Appellants now ask this Court to determine whether, pursuant to the SMC Act, the President Judge of the Court of Common Pleas of Washington County, wherein the subject coal, land, and right-of-way are situate, is required to serve as chairman of the convened Mining Commission, or whether he has the authority to delegate another judge to serve in his place, as in the present matter. They argue that proper statutory construction of the SMC Act mandates that the President Judge serve as chairman of the Mining Commission and that no allowance for designation of another is permitted. Appellants concede that the legislature specifically provided that four of the five appointed members of the Mining Commission may designate a representative to act in their stead, but emphasizes that no such statutory language in the SMC Act, the Pennsylvania Constitution, or the Judicial Code authorizes any such delegation by the President Judge.

The Turnpike Commission takes issue with what it refers to as Appellants' narrow interpretation of the Statutory Construction Act[2] to arrive at the "absurd" conclusion that only the president judge of the county's common pleas court may serve as chairman of a duly convened Mining Commission, and that if said president judge must, for any reason, recuse himself, he lacks the authority to appoint another judge to serve in his place. On the contrary, the Turnpike Commission emphasizes a president judge's inherent, statutory authority to appoint a senior judge to take his place, as well as the fact that the Legislature's authority is not superior to that of the Judiciary. Finally, the Turnpike Commission contends that Appellants' proposed interpretation of the SMC Act contravenes the express provisions of the

1. Act of June 1, 1933, P.L. 1409, *as amended,* 52 P.S. §§ 1501–1507. Section 1 provides in relevant part:

> The application on behalf of the Commonwealth shall be made by the department, board or commission of the State government having jurisdiction over the particular land, easement or right of way underlaid by mineable coal. The president judge of the court of common pleas of the county in which the land, easement or right of way is situated, who shall be the chairman thereof, one member of the Public Utility Commission or an engineer designated by it, the Secretary of Mines or his designated representative, the head of the department, board or commission of the State government owning the lands, easements or right of ways in question or his designated representative, and an engineer designated by the owner or person entitled to remove the coal, are hereby constituted a special commission to be known as the State Mining Commission.

2. Statutory Construction Act of 1972, 1 Pa. C.S. §§ 1501—1991.

Judicial Code, judicial rules, and Pennsylvania case law.

Upon review, we concur with the Appellee's arguments concerning President Judge Gladden's authority to appoint Judge Terputac to serve on the Commission in his place. In *First Judicial District of Pennsylvania v. Pennsylvania Human Relations Commission,* 556 Pa. 258, 727 A.2d 1110, 1112 (1999), in which the Pennsylvania Human Rights Commission proposed certain activity that would include requiring court officials to produce records and documents, answer interrogatories, and appear before the Commission or its hearing officers in the context of a hearing, our Supreme Court stated:

> Such interference in the operation of courts is prohibited by the separation of powers doctrine.[1] The supreme court has the sole power and the responsibility to supervise the "practice, procedure, and the conduct of all courts." Neither the legislative branch nor the executive branch of government acting through an administrative agency may constitutionally infringe on this judicial prerogative. In *Court of Common Pleas of Erie County v. PHRC,* 546 Pa. 4, 682 A.2d 1246 (1996), this court held that "in order to carry out the duties delegated to the judiciary by the Constitution, the courts must retain the authority to select the people who are needed to serve in judicial proceedings and to assist judges in performing their judicial duties." 682 A.2d at 1248.... Further, we hold that the commission has no jurisdiction, because of the separation of powers doctrine, to adjudicate any complaints against the judicial branch.

> This holding is only a logical extension of the holding in Erie v. PHRC that "the separation of powers doctrine requires that judges retain the authority to select, discharge and supervise court employees." It is self-evident that if the commission imposed methods of employee selection or supervision or discharge, or directed that certain working conditions rather than others must apply, judges would have lost the power to control these aspects of the operation of the courts. The fundamental error in *[County of Allegheny v. Wilcox,* 76 Pa. Cmwlth. 584, 465 A.2d 47 (1983)]* was not recognizing that a non-judicial agency's involvement in running the courts can never survive constitutional scrutiny, for no matter how innocuous the involvement may seem, the fact remains that if an agency of the executive branch instructs a court on its employment policies, of necessity, the courts themselves are not supervising their operations.

> [1] "Under the separation of powers doctrine, the legislature may not exercise any power specifically entrusted to the judiciary." *Court of Common Pleas of Erie v. PHRC,* 546 Pa. 4, 682 A.2d 1246, 1247 (Pa.1996), citing *Kremer v. State Ethics Comm'n,* 503 Pa. 358, 469 A.2d 593, 595 (1983).

(Citation omitted.) Based upon the foregoing discussion, which we find applicable to the present matter, we concur with Appellees' averments that President Judge Gladden, by the very fact of his judicial status, has the authority to appoint another member of the judiciary to take his place on the Mining Commission. In this regard, we reject Appellants' literal construction of the SMC Act as precluding the president judge's designation of another judge to sit in his stead. Accordingly, the order of the Common Pleas Court is affirmed.

Judge PELLEGRINI dissents.

### ORDER

AND NOW, this 10th day of July 2002, the order of the Court of Common Pleas of

Washington County in the above-captioned matter is affirmed.