## IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Renner,                    :
               Appellant    :
                             :
          v.                    :
                             :
The Court of Common Pleas          :
of Lehigh County, County of Lehigh,    :    No. 1479 C.D. 2017
John J. Sikora and Mark Surovy      :    Argued: September 18, 2018

OPINION
PER CURIAM                         FILED: October 12, 2018

Michael Renner (Renner) appeals from the Lehigh County Common Pleas Court's (trial court) July 10, 2017 order sustaining Lehigh County Common Pleas Court's (Common Pleas Court)[1] preliminary objections (Preliminary Objections) to Renner's Complaint (Complaint) against Common Pleas Court, Lehigh County, Lehigh County's Chief Probation Officer John J. Sikora (Sikora) and Lehigh County's Benefits Manager Mark Surovy (Surovy), and dismissing Renner's claims against Common Pleas Court with prejudice.[2]  Renner presents two issues for this Court's review: (1) whether the trial court erred by sustaining Common Pleas Court's Preliminary Objections based on sovereign immunity; and (2) whether the trial court erred by sustaining Common Pleas Court's Preliminary Objections based on the separation of powers.  After review, we affirm.

---

[1] In order to avoid confusion regarding the dual role of the Lehigh County Common Pleas Court as both an appellee and the trial court in this matter, we refer to the court as *Common Pleas Court* with respect to its role as the appellee in this action and as the *trial court* with respect to its role as the trial court.

[2] Lehigh County, Sikora, Surovy and Renner stipulated to the dismissal of the remaining parties without prejudice so Renner could pursue this appeal.

## Background[3]

On or about April 3, 1989, the Lehigh County Office of Adult Probation hired Renner as a "Parole Officer." Complaint ¶3. In July 2011, Renner disclosed to Sikora that he had been diagnosed with a serious medical condition as he was hospitalized at that time for said condition and subsequently absent from work on a medical leave for four to six weeks. During Renner's absence, Sikora called him several times to confirm that Renner's condition was legitimate. Upon Renner's return to work, Sikora and Surovy allegedly began treating him in a hostile manner which included: (1) telling Renner to resign or take a leave of absence; (2) suggesting that Renner was no longer capable of performing his job duties; (3) subjecting Renner to new cases in excess of a normal caseload and increasing his reviews; (4) requiring Renner to work without a functional laptop; (5) Sikora stopped working on charitable projects with Renner, restricting his communication purely for business purposes; and, (6) suggesting that Renner was faking his medical condition. Renner confronted Sikora about his hostile behavior, but Sikora refused to discuss the matter. Surovy requested that Renner be transferred out of Surovy's supervision, but Sikora denied the request. Renner also requested a transfer, but Court Administrator William Berndt refused his request. Sikora subsequently began insinuating that Renner was gay and made inappropriate and hostile comments about gay people.

In October 2013, Sikora allegedly asked Renner to resign because of his medical condition. Instead, Renner opted to enter the employer sponsored employee assistance program (EAP). In March 2014, Sikora terminated Renner's employment for failing to administer a urine test to an offender under his supervision. Renner averred that the test was not required and his employment termination was pretextual. Renner protested his employment termination to Common Pleas Court's then

---

[3] The facts are recited as set forth in Renner's Complaint.

President Judge Carol K. McGinley (Judge McGinley) who was the designated Appeals Officer under Lehigh County's Rules and Regulations. Judge McGinley allegedly refused to take any action. Thereafter, Renner could not obtain employment in any other court system. Renner therefore sought retraining as a Municipal Police Officer, and completed his Police Academy training on June 26, 2015. Renner was offered a job by Northampton and Fountain Hill Boroughs as a police officer. Renner's duties as a police officer required that he be available to appear in courts, including but not limited to Lehigh and Northampton Counties. Police officers are permitted to remain armed with their duty weapons while in the Lehigh County Courthouse. Through means unknown to Renner, Common Pleas Court and Lehigh County allegedly learned that Renner was to be hired as a police officer, and caused an order to be issued on October 1, 2015, banning him from possessing a firearm or Taser in the Lehigh County Courthouse, Old Courthouse and Government Center.

Allegedly, as a direct consequence of this action by Common Pleas Court and Lehigh County, Salisbury,[4] Northampton and Fountain Hill Boroughs rescinded their employment offers to Renner. Renner appealed from Salisbury's rescission letter, and was given a hearing date of February 11, 2016. Renner's gun ban was allegedly rescinded on February 3, 2016, and as a condition of the ban's rescission, Common Pleas Court and Lehigh County allegedly required Renner to undergo a medical examination that is prohibited under the Pennsylvania Human Relations Act (PHRA).[5] On or about February 11, 2016, Salisbury's Police Civil Service Commission upheld the rescission of Renner's job offer. Renner avers that

---

[4] Although Renner, in the Complaint, refers to Salisbury's employment offer rescission, *see* Complaint ¶51, Renner avers that he received job offers only from Northampton Borough and Fountain Hill. *See* Complaint ¶45.

[5] Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951-963.

Common Pleas Court and Lehigh County continue to interfere with his employment opportunities, including but not limited to, providing false and misleading job references to municipal police agencies. Fountain Hill Borough allegedly has refused to hire Renner based solely upon information supplied by Common Pleas Court and Lehigh County that Renner is not favored by the Lehigh County Judges.

Renner believes that Common Pleas Court and Lehigh County provided information to Salisbury Township that resulted in its decision to uphold the rescission of his job offer. Renner alleges that Common Pleas Court and Lehigh County took no remedial action to prevent this discriminatory and retaliatory conduct, and permitted such conduct to continue unabated.

## Procedural History

On August 29, 2014, Renner filed a charge of unlawful discrimination with the Equal Employment Opportunity Commission (EEOC), which was dual-filed with the Pennsylvania Human Relations Commission (PHRC), against Lehigh County Adult Probation, Sikora and Surovy. On November 10, 2016, Renner filed his Complaint in the trial court.[6] Common Pleas Court filed Preliminary Objections, along with a Brief in Support of Preliminary Objections, on December 16, 2016. Renner filed a response and Memorandum of Law in Opposition to Common Pleas Court's Preliminary Objections on December 22, 2016. The trial court held oral argument on June 2, 2017. On July 10, 2017, the trial court sustained the Preliminary Objections and dismissed all claims against Common Pleas Court with prejudice. Renner appealed to this Court.[7]

---

[6] According to Renner's Complaint, as of the filing thereof, his action remained pending with the PHRC.

[7] "When reviewing a trial court's order sustaining preliminary objections in the nature of a demurrer, our standard of review is *de novo* and our scope of review is plenary." *Young v. Estate of Young*, 138 A.3d 78, 84 (Pa. Cmwlth. 2016).

**Discussion**

Initially, Renner intertwines his arguments by relying on *Court of Common Pleas of Erie County v. Pennsylvania Human Relations Commission*, 682 A.2d 1246 (Pa. 1996), as support for his position that the General Assembly in its enactment of the PHRA waived immunity for the common pleas courts and that the PHRA does not violate the separation of powers doctrine. However, to correctly apply *Erie County* it is important to understand its context. Before *Erie County* was decided, this Court issued *Allegheny County v. Wilcox*, 465 A.2d 47 (Pa. Cmwlth. 1983), wherein it explained that because Section 4(b) of the PHRA's definition of employer does not specifically except the common pleas court from the PHRA's ambit, it was the legislature's intent that the common pleas court be subject to the PHRA. The *Allegheny County* Court further rejected the common pleas court's argument that the PHRC's action violated the separation of powers clause, holding:

> [U]nder the *facts of the case before us,* we do not believe that the [common pleas court] has carried its burden of establishing that the PHRA is unconstitutional. The [PHRC's] order does not direct the [common pleas court] to

---

In ruling on preliminary objections, we must accept as true all well-pleaded material allegations in the petition for review, as well as all inferences reasonably deduced therefrom. The Court need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. In order to sustain preliminary objections, it must appear with certainty that the law will not permit recovery, and any doubt should be resolved by a refusal to sustain them.

A preliminary objection in the nature of a demurrer admits every well-pleaded fact in the complaint and all inferences reasonably deducible therefrom. It tests the legal sufficiency of the challenged pleadings and will be sustained only in cases where the pleader has clearly failed to state a claim for which relief can be granted. When ruling on a demurrer, a court must confine its analysis to the complaint.

*Torres v. Beard*, 997 A.2d 1242, 1245 (Pa. Cmwlth. 2010) (citations omitted).

hire anyone into confidential employee positions or to fire such an employee. Rather, the [PHRC's] order merely requires the *upgrading* or *equalization* of pay, and it is clear that the courts can compel the appropriate legislative body to appropriate sums which are reasonably necessary for their proper operation and administration. We do not find, therefore, under the facts presented, any impairment of the independence or function of the [common pleas court].

*Allegheny County*, 465 A.2d at 52 (emphasis in original; citations omitted).

Thereafter, in *Erie County*, the Pennsylvania Supreme Court expounded:

The present case, unlike [*Allegheny County*]*,* implicates a court's power to discharge its personnel. In order to carry out the duties delegated to the judiciary by the Constitution, the courts must retain the authority to select the people who are needed to serve in judicial proceedings and to assist judges in performing their judicial functions. By reviewing court personnel decisions, the PHRC would encroach upon this authority. The separation of powers doctrine thus prohibits the PHRC from hearing a discharged court employee's claim. Otherwise, the PHRC could potentially reinstate an employee terminated by the judiciary.

*Erie County*, 682 A.2d at 1248 (citation omitted). Finally, the Supreme Court in *First Judicial District of Pennsylvania v. Pennsylvania Human Relations Commission*, 727 A.2d 1110 (Pa. 1999), revisited *Allegheny County* and *Erie County*, and clarified:

In [*Erie County*], this [C]ourt held that 'in order to carry out the duties delegated to the judiciary by the Constitution, the courts must retain the authority to select the people who are needed to serve in judicial proceedings and to assist judges in performing their judicial duties.' [*Id.*] at 1248. In that case, the [PHRC] sought to assert jurisdiction over the [common pleas court] in a complaint alleging that a court employee was fired because of his race. Although we held that the [PHRC] had no jurisdiction in such a case because of the separation of powers doctrine, we did not reject the rationale [of *Allegheny County*] wherein the Commonwealth Court had held that the [PHRC] may require a court to equalize pay in a gender discrimination suit under the [PHRA] without violating the separation of powers doctrine. Thus, the state of the law concerning the

6

[PHRC's] jurisdiction following [*Erie County*] could be summarized as allowing the [PHRC's] involvement in some aspects of court personnel policies and practices, but not others. In order to discover whether a particular involvement was acceptable, the matter would have to be adjudicated to determine whether it was impermissibly invasive under the constitution. **We now reject this view. Further, we hold that the [PHRC] has no jurisdiction, because of the separation of powers doctrine, to adjudicate any complaints against the judicial branch.**

This holding is only a logical extension of the holding in [*Erie County*] that 'the separation of powers doctrine requires that judges retain the authority to select, discharge and supervise court employees.' [*Id.*] at 1247, citing *Bradley v. Pa. Labor Relations Bd., . . .* 388 A.2d 736 ([Pa.] 1978). It is self-evident that if the [PHRC] imposed methods of employee selection or supervision or discharge, or directed that certain working conditions rather than others must apply, judges would have lost the power to control these aspects of the operation of the courts. The fundamental error in [*Allegheny County*] was not recognizing that a non-judicial agency's involvement in running the courts can never survive constitutional scrutiny, for no matter how innocuous the involvement may seem, the fact remains that if an agency of the executive branch instructs a court on its employment policies, of necessity, the courts themselves are not supervising their operations.

*First Judicial District*, 727 A.2d at 1112 (emphasis added).

It is against this backdrop, we examine Renner's arguments. Renner first argues that the trial court erred by concluding that sovereign immunity barred his Complaint. Section 2310 of the Statutory Construction Act of 1972 (SCA), states in pertinent part:

[I]t is hereby declared to be the intent of the General Assembly that the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign immunity and official immunity and remain immune from suit **except as the General Assembly shall specifically waive the immunity**.

7

1 Pa.C.S. § 2310 (emphasis added). Further, Section 8521(a) of the Judicial Code states: "Except as otherwise provided in this subchapter, no provision of this title shall constitute a waiver of sovereign immunity for the purpose of [Section 2310 of the SCA] (relating to sovereign immunity reaffirmed; specific waiver) or otherwise." 42 Pa.C.S. § 8521(a). Section 8522(a) of the Judicial Code provides:

> The General Assembly, pursuant to [S]ection 11 of Article I of the Constitution of Pennsylvania, does hereby waive, in the instances set forth in subsection (b) . . . , sovereign immunity as a bar to an action against Commonwealth parties, for damages arising out of a negligent act where the damages would be recoverable under the common law or a statute creating a cause of action if the injury were caused by a person not having available the defense of sovereign immunity.

42 Pa.C.S. § 8522(a). This Court has summarized:

> The nine exceptions to sovereign immunity, as provided by [Section 8522(b) of the Judicial Code], are: (1) vehicle liability; (2) medical-professional liability; (3) care, custody or control of personal property; (4) Commonwealth real estate, highways and sidewalks; (5) potholes and other dangerous conditions; (6) care, custody and control of animals; (7) liquor store sales; (8) National Guard activities; and (9) toxoids and vaccines.

*Heicklen v. Hoffman*, 761 A.2d 207, 209 n.7 (Pa. Cmwlth. 2000).

Renner contends that Section 4(b) of the PHRA which defines "employer" reveals the General Assembly's intent to expressly waive sovereign immunity and make Common Pleas Court liable for its alleged unlawful discriminatory and retaliatory conduct. That Section provides, in pertinent part:

> **the Commonwealth or any political subdivision or board, department, commission or school district thereof and any person employing four or more persons within the Commonwealth**, but except as hereinafter provided, does not include religious, fraternal, charitable or sectarian corporations or associations, except such corporations or associations supported, in whole or in part,

8

by governmental appropriations. The term 'employer' with respect to discriminatory practices based on race, color, age, sex, national origin or non-job related handicap or disability, includes religious, fraternal, charitable and sectarian corporations and associations employing four or more persons within the Commonwealth.

43 P.S. § 954(b) (emphasis added). This Court in *Allegheny County* concluded that the above definition does include common pleas courts. However, it expressly rejected the common pleas court's sovereign immunity argument because it was not sufficiently argued in its brief, not because the General Assembly waived sovereign immunity by including common pleas court in the PHRA's definition of employer. Thus, the fact that the PHRA's definition of employer could be construed to include the common pleas court is not dispositive of the sovereign immunity issue.

Renner further relies upon *Erie County* in support of his argument that the legislature waived sovereign immunity for the common pleas court and thus, Common Pleas Court can be sued for unlawful employment discrimination.[8] Renner concedes that in *Erie County*, the Pennsylvania Supreme Court held that the separation of powers doctrine prohibits the PHRC from hearing a case involving the common pleas court's hiring or firing of personnel. However, Renner emphasizes that the *Erie County* Court continued:

[C]ourt employees who are discriminated against are not without recourse. After the PHRC dismisses their claims for lack of jurisdiction, such employees may file actions in the court of common pleas based on the rights granted by the PHRA.[9] *See* [Section 12 of the PHRA,] 43 [P.S.] § 962(c)(1) [('In cases involving a claim of discrimination, if a complainant invokes the procedures set forth in this act, that individual's right of action in the courts of the Commonwealth shall not be foreclosed.')].

---

[8] Renner also cited to *Mansfield State College v. Kovich*, 407 A.2d 1387 (Pa. Cmwlth. 1979), to support his position; however, that case did not involve the common pleas courts or the sovereign immunity thereof.

[9] Significantly, Renner did not include Common Pleas Court in his PHRC Complaint.

9

*Erie County*, 682 A.2d at 1249. It is Renner's contention that this translates to a recognition that Common Pleas Court is not protected by sovereign immunity. Contrary to Renner's assertion, sovereign immunity was not before the Court in *Erie County*. Thus, as in *Allegheny County*, *Erie County* did not address sovereign immunity.

> This Court has explained:
>
> Under Article 5, Section 1 of the Pennsylvania Constitution, the 'judicial power of the Commonwealth shall be vested in a unified judicial system.' Pa. Const. art. 5, § 1. The courts of common pleas are included in the unified judicial system. *Id.*; [Section 301(4) of the Judicial Code,] 42 Pa.C.S. § 301(4) ('The judicial power of the Commonwealth shall be vested in a unified judicial system consisting of the . . . [c]ourts of common pleas').

*Russo v. Allegheny Cty.*, 125 A.3d 113, 116 (Pa. Cmwlth. 2015), *aff'd*, 150 A.3d 16 (Pa. 2016). "Accordingly, . . . [common pleas court], as a court of the unified judicial system, is entitled to the sovereign immunity of the Commonwealth." *Id.* at 117. Because our Supreme Court has not declared in *Erie County* or otherwise that the General Assembly has expressly waived sovereign immunity under the PHRA as Renner contends, we reject Renner's argument that the *Erie County* Court established waiver of the common pleas court's sovereign immunity.

Renner next argues that the trial court erred by sustaining Common Pleas Court's preliminary objections based on the separation of powers. However, Renner concedes that in *Erie County*, the Pennsylvania Supreme Court held that the separation of powers doctrine prohibits the PHRC from hearing a case involving the common pleas courts' hiring or firing of personnel. Renner asserts that because the *Erie County* Court permitted court employees who are subjected to unlawful discrimination to file actions in the common pleas court based on the rights granted

10

by the PHRA, that the *Erie County* Court declared that Common Pleas Court can be sued under the PHRA.

> The Pennsylvania Constitution provides:
>
>> The Supreme Court shall have the power to prescribe general rules governing practice, procedure and the conduct of all courts, justices of the peace and all officers serving process or enforcing orders, judgments or decrees of any court or justice of the peace, including the power to provide for assignment and reassignment of classes of actions or classes of appeals among the several courts as the needs of justice shall require, and for admission to the bar and to practice law, and the administration of all courts and supervision of all officers of the Judicial Branch, if such rules are consistent with this Constitution and neither abridge, enlarge nor modify the substantive rights of any litigant, nor affect the right of the General Assembly to determine the jurisdiction of any court or justice of the peace, nor suspend nor alter any statute of limitation or repose. All laws shall be suspended to the extent that they are inconsistent with rules prescribed under these provisions.
>
> Art. V, Section 10(c). In pertinent part, this provision grants the [S]upreme [C]ourt 'the power . . . to provide for . . . the administration of all courts and supervision of all officers of the judicial branch.'

*First Judicial Dist.*, 727 A.2d at 1111-12. "Under the separation of powers doctrine, the legislature may not exercise any power specifically entrusted to the judiciary." *Erie County*, 682 A.2d at 1247. "[T]hus[,] . . . legislation infringing upon [the Pennsylvania Supreme] Court's authority over Pennsylvania courts is invalid." *Id.*

Just as "the [PHRC] has no jurisdiction, because of the separation of powers doctrine, to adjudicate any complaints against the judicial branch[,]" *First Judicial Dist.*, 727 A.2d at 1112, "[u]nder the doctrine of separation of powers, the legislature may not exercise any power specifically entrusted to the judiciary[.]"

*Kremer v. State Ethics Comm'n*, 469 A.2d 593, 595 (Pa. 1983). Accordingly, because the General Assembly cannot interfere with the Supreme Court's authority "to provide for . . . the administration of all courts" through the PHRA, Renner could not bring this action against Common Pleas Court thereunder. *First Judicial Dist.*, 727 A.2d at 1112. In other words, because Common Pleas Court is a part of the judiciary, it is not subject to the PHRA. *See L.J.S. v. State Ethics Comm'n*, 744 A.2d 798 (Pa. Cmwlth. 2000) (A probation officer is a judicial employee, thus, under the separation of powers doctrine, is not subject to the Public Official and Employee Ethics Act.[10]); *Russo*, 125 A.3d at 121 ("[T]he General Assembly did not intend the judiciary to be included within the definition of an employer subject to the Whistleblower Law.[11]"[12] The common pleas court is a part of the judiciary, thus, under the separation of powers doctrine, is not subject to the Whistleblower Law.).

---

[10] 65 Pa.C.S. §§ 1101-1113.

[11] Act of December 12, 1986, P.L. 1559, *as amended,* 43 P.S. §§ 1421-1428.

[12]

> An 'employer' under the Whistleblower Law is defined as a 'public body' or an individual, partnership, association or corporation that receives money from a public body to perform work or provide services to a public body. Section 2 of the Whistleblower Law, 43 P.S. § 1422. A 'public body' is defined as:
>
> > (1) A State officer, agency, department, division, bureau, board, commission, council, authority or other body in the executive branch of State government.
> > (1.1) The General Assembly and its agencies.
> > (2) A county, city, township, regional governing body, council, school district, special district or municipal corporation, or a board, department, commission, council or agency.
> > (3) Any other body which is created by Commonwealth or political subdivision authority or which is funded in any amount by or through Commonwealth or political subdivision authority or a member or employee of that body.
>
> *Id.*

*Russo*, 125 A.3d at 120.

12

Accordingly, the trial court did not err by sustaining Common Pleas Court's Preliminary Objections based on the separation of powers.

For all of the above reasons, the trial court's order is affirmed.

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Michael Renner,               :
                Appellant      :
                               :
              v.                :
                               :
The Court of Common Pleas     :
of Lehigh County, County of Lehigh,   :     No. 1479 C.D. 2017
John J. Sikora and Mark Surovy     :

PER CURIAM

## O R D E R

AND NOW, this 12th day of October, 2018, the Lehigh County Common Pleas Court's July 10, 2017 order is affirmed.