**Kim C. NETHKEN**

v.

**COMMONWEALTH of Pennsylvania, CIVIL SERVICE COMMISSION,**
**Appellant.**

Commonwealth Court of Pennsylvania.

Argued Sept. 15, 2005.

Decided Nov. 1, 2005.

Linda S. Lloyd, Harrisburg, for appellant.

Ronald T. Tomasko, Harrisburg, for appellee.

BEFORE: LEADBETTER, Judge, SIMPSON, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this interlocutory appeal, we are asked if the Pennsylvania Civil Service Commission (Commission) is an employment agency within the meaning of the Pennsylvania Human Relations Act (PHRA)[1] such that it could be liable for age discrimination. We affirm the Court of Common Pleas of Dauphin County's (trial court) determination that the Commission is an employment agency and liable under PHRA.

This case began when Kim C. Nethken filed a charge of age discrimination against the Commission with the Pennsylvania Human Relations Commission (PHRC). After several years of proceedings, Nethken filed a complaint alleging a violation of PHRA, which was transferred to the trial court. The controversy focused on available positions for Personnel Analyst Train-

1. Act of October 27, 1955, P.L. 744, *as amended,* 43 P.S. §§ 951–962.2.

ee (PAT) announced by the Commission. A prerequisite for a PAT position was "a bachelor's or graduate degree conferred or expected between September 11, 1993 and July 1, 1999."

Nethken, who graduated from college in 1974, applied for a PAT position. The Commission administered aptitude examinations, and Nethken received the third highest score. In December 1998, the Commission advised Nethken that her application was rejected solely because she did not satisfy the recent college degree requirement. Ultimately, 28 applicants were hired for PAT positions.

The trial court decided the Commission is an employment agency within the mean-

ing of PHRA.[2] Further, the trial court found the Commission's job posting for PAT positions and its subsequent rejection of Nethken's application constituted a *prima facie* case of unlawful age discrimination.[3] The trial court granted partial summary judgment to Nethken on liability, reserving for future assessment a decision on damages. With this Court's permission,[4] the Commission appealed.[5]

The Commission raises two interrelated issues. First, the Commission maintains it is not the correct party, necessitating reversal. In particular, the Commission contends it no longer enjoys authority to set job requirements. Instead, since its enabling legislation was amended in 1963,[6]

2. Sections 5(a) of PHRA at 43 P.S. § 955(a) provide in pertinent part:

> It shall be an unlawful discriminatory practice, unless based on a bona fide occupational qualification ... [f]or any employer because of the ... age ... of any individual to refuse to hire or employ, or to bar or to discharge from employment such individual, or to otherwise discriminate against such individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment, if the individual is the best able and most competent to perform the services required.
> The term age includes any person 40 years old or older. 43 P.S. § 954(h).
> Section 5(b) of PHRA provides in pertinent part at 43 P.S. § 955(b):
> It shall be an unlawful discriminatory practice ...
> (b) For any employer, employment agency ... to:
> * * *
> (2) Print or publish or cause to be printed or published any notice or advertisement relating to employment or membership indicating any preference, limitation, specification or discrimination based on ... age,
> ....
> ....
> (4) Substantially confine or limit recruitment or hiring of individuals, with intent to circumvent the spirit and purpose of this act, to any employment agency, employment service, labor organization, training school or training center or any other em-

ployee-referring source which services individuals who are predominately of the same ... age ....

3. The trial court found Nethken was within the protected class of people over the age of 40 and was otherwise qualified for the PAT position as evidenced by her achievement on the placement test. Further, the Commission admitted it rejected Nethken's application solely because she "did not satisfy the recent-college-degree requirement." Trial Ct. Op. at p. 2.

4. Pa. R.A.P. 1311(b); 42 Pa.C.S. § 702(b).

5. When examining a question of law and reviewing a trial court's construction of a statute, this Court's scope of review is plenary. *See Bd. of Assessment and Revision of Taxes of Forest County v. Pa. Gen. Energy Corp.*, 738 A.2d 41 (Pa.Cmwlth.1999). This Court's scope of review of Commission adjudication is to determine whether it is in accord with the law, whether its findings of fact in support of its conclusions are based upon substantial evidence, and whether constitutional rights were violated. *Bosnjak v. State Civil Service Comm'n*, 781 A.2d 1280 (Pa.Cmwlth.2001).

6. The Commission was created by Article II of the Civil Service Act, Act of August 5, 1941, P.L. 752, *as amended*, 71 P.S. §§ 741.201–741.214. The Act of August 27, 1963, P.L. 1257, formerly Article III of the Civil Service

the Commission merely applies qualifications established by the Executive Board of the Commonwealth (Executive Board).[7] Thus, the Executive Board is the only proper party, because only that body established the discriminatory criterion here.[8] The Commission contends that because Nethken failed to sue the only proper party, judgment must be granted in its favor.

 We disagree. Depending on the nature of the discrimination, Section 5 of PHRA allows liability to be imposed on any "person, employer, employment agency, labor organization or employee . . . ." 43 P.S. § 955. Thus, liability under the PHRA can be visited upon multiple entities based on different acts. There is no basis to conclude that only one entity can be liable for discrimination as a matter of law. Assuming the Commission satisfies other requirements of the PHRA, the Commission can be liable for discrimination despite the existence of other possible defendants.

Second, the Commission asserts it does not fall within Section 5 of the PHRA because it is not an employment agency within the common meaning of that term.

We reject this contention. Specifically, we decline to apply a "common meaning" analysis because the term "employment agency" is defined in the PHRA.

 Section 4(e) of PHRA defines "employment agency" as "any person regularly undertaking, with or without compensation, to procure opportunities to work or to procure, recruit, refer or place employees." 43 P.S. § 954(e). The term "person" is defined to include "the Commonwealth of Pennsylvania, and all political subdivisions, authorities, boards and commissions thereof." 43 P.S. § 954(a). Thus, the plain language of the PHRA applies to the Commission, to the extent it procures, recruits, refers or places employees.

As an alternative contention, the Commission asserts it does not "procure, recruit, refer or place" employees. Instead, its job is entirely ministerial. The Commission compiles lists of the names of minimally eligible people seeking a position for use by Commonwealth agencies based upon the Executive Board's criteria. The employing agency uses the lists together with an interview to make a hiring decision. The Commission does not make that decision. The Commission suggests the legislative intent is to prevent private employers from disguising a discriminatory intent by using an outside employment agency to do the private employer's hiring or contracting.

An examination of the Commission's enabling legislation, the Civil Service Act,[9] reveals its responsibility regarding obtaining qualified employees for state service. The stated purpose of the Civil Service Act is to foster greater efficiency and economy in the administration of state government through the "establishment of conditions of service, which will attract to the service of the Commonwealth qualified persons of character and ability and their appointment and promotion on the basis of merit and fitness are means to this end." Section 2 of the Civil Service Act, 71 P.S. § 741.2. The Commission delegates these administrative functions to a Director who has specific powers and duties. Sections

---

Act, 71 P.S. §§ 741.301–741.305, titled Classification of Positions in the Classified Service.

7. 4 Pa.Code § 95.14.

8. See Section 709(a) of the Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended,* 71 P.S. § 249(a).

9. Act of August 5, 1941, P.L. 752, *as amended,* 71 P.S. §§ 741.1–741.1005.

203(6) and 206 of the Civil Service Act, 71 P.S. §§ 741.203(6), 206.

Section 502 of the Civil Service Act requires the Commission's Director give examinations in order to "establish employment and promotion lists." 71 P.S. § 741.502. Under Sections 503 and 506, the Director must "rate" the applicants and prepare the eligibility lists. 71 P.S. § 741.503, § 741.506. Whenever a vacancy occurs, the Director certifies to the appointing authority "the names of three eligibles ... who are highest on the appropriate promotion list or employment list" for merit based hiring. Section 601 of the Civil Service Act, 71 P.S. § 601.

The Commission's regulations add detail. Applications for employment must be submitted to and in a format prescribed by the Director. 4 Pa.Code §§ 95.1(a). The Director can require an applicant submit additional evidence of merit and fitness and can accordingly reject applicants. 4 Pa.Code § 95.1(b)(d). It is the Director who assembles "the official initial eligible list" of persons qualified for an appointing authority position. 4 Pa.Code § 95.51. The Director then certifies to the appointing authority the names and addresses of those eligible from the appropriate list. 4 Pa.Code § 97.3(a).

■ If a person's name is not on a list of "eligibles," the employing agency has no knowledge of her or her qualifications. Hence, Nethken's name was not referred on the list of "eligibles." Here, compiling the list of PAT position eligibles and forwarding the list to the employing agency for further consideration constitute actions of an employment agency within the definition in the PHRA. Moreover, the intentional omission of Nethken's name from the "eligibles" list is the basis for the discrimination claim.

The Commission's assertion that an "employment agency" can only be liable for discrimination in the private employment realm is utterly without merit. As previously discussed, the definition of "employment agency" in the PHRA incorporates the definition of "person," which specifically includes the Commonwealth and all commissions thereof.

Similarly, we find no merit in the Commission's argument that it cannot be liable as an employment agency because its actions were ministerial. The statutory definition contains no exceptions based on the presence or lack of discretion.

■ The result is corroborated by a common sense analysis. The Commission is the only entity with which Nethken dealt. It was the agent through which a discriminatory practice was applied. The PHRA reaches those who make discriminatory decisions and those who execute such decisions. Also, the PHRA reaches public employers as well as private employers. In sum, no error is present in the determination against the Commission.

For all the reasons discussed, the Commission acts as an "employment agency" within the meaning of PHRA, and we affirm the trial court's conclusion to that effect. Because the other bases for the Commission's liability for age discrimination are not disputed, we affirm the grant of partial judgment on liability.

### ORDER

AND NOW, this 1st day of November, 2005, the order of the Court of Common Pleas of Dauphin County is **AFFIRMED.**