IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Larry Bowser,                              :
             Appellant        :
                                    : No.  653 C.D. 2018
             v.                      :
                                      :
Clarion County                            : Argued:  February 14, 2019

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MICHAEL H. WOJCIK, Judge
                HONORABLE ELLEN CEISLER, Judge

OPINION BY
JUDGE McCULLOUGH                                    FILED:  March 18, 2019

Larry Bowser (Bowser) appeals from the April 25, 2018 order of the Court of Common Pleas of Clarion County (trial court) that granted summary judgment in favor of Clarion County (County) on his claim alleging age discrimination under the Pennsylvania Human Relations Act (PHRA).[1]

**Background**

On April 25, 2015, Bowser filed a complaint against the County, averring that he was terminated from his position as a probation officer in the Probation Office for the Court of Common Pleas of Clarion County (CPP) and alleging that the County was his "employer" for purposes of the PHRA.

On January 2, 2018, after the close of discovery, the County filed a motion for summary judgment, asserting that Bowser failed to produce evidence to sustain a

_____

[1] Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. §§951-963.

claim against it because the County and the CCP were separate governmental entities and the CCP was Bowser's sole employer. The County also contended that it articulated legitimate, nondiscriminatory reasons for terminating Bowser and that Bowser had insufficient evidence to establish that the reasons were a pretext for age discrimination. Bowser filed a response to the motion on January 26, 2018. Both parties also filed briefs. At oral argument on the summary judgment motion, the parties agreed on the record that there were no factual disputes at issue and that the motion could be decided as a matter of law. (Trial court op. at 2.)

That said, the pertinent facts of this case, as recounted by the trial court, are as follows:

> [Bowser] began working as a Juvenile Probation Officer in 1993. [Bowser] interviewed for the position with then-President Judge Alexander and his secretary. Following his second interview, [Bowser] was hired by Judge Alexander. As a Juvenile Probation Officer, [Bowser's] work was done for the Court. The President Judge was "head boss" over the probation offices according to [Bowser]. Probation Officers were subject to a Collective Bargaining Agreement (CBA) which indicated that they were court[-]appointed employees. Probation Officers were subject to the Unified Judicial System (UJS) Code of Conduct for Employees. [Bowser] received a copy of the Code of Conduct when he was hired.
>
> The Personnel Requisition form reflecting [Bowser's] hire shows that the County Commissioners and the County Treasurer approved the hire. During [Bowser's] employment as a Juvenile Probation Officer, [the] County was the sole employer listed on his pay stubs and W-2 statements. The check issued after his termination to compensate him for unused benefits was issued by [the] County. His earning statements list [the] County as his employer, as does the W-4 form generated at the start of his employment. The annual statements concerning his accrued benefits were issued and signed by the [] County Commissioners.

2

The President Judge handled all discipline, hiring, and termination decisions of probation officers. [Bowser] had a history of disciplinary issues. In 1999, [Bowser's] business cellphone had $89.80 in personal call charges, which was considered improper use of the Probation [Office's] cell phone policy. [Bowser] was notified of the improper cell phone use by a memo issued by Judge Alexander and disciplinary action was taken by Judge Alexander. During Judge Alexander's time as President Judge, [Bowser] often called Judge Alexander at home to discuss work issues. At one point, Judge Alexander took senior status and Judge Arner came in as President Judge. During this time, both judges were involved in decision making for disciplinary purposes. Eventually, Judge Arner became the sole decision maker for discipline.

\* \* \*

When Judge Arner was President Judge, now-Probation Director Jayne Smail and her Deputy Director [Mike Blum] would interview candidates for job openings and would pick one or two applicants to interview with Judge Arner. Judge Arner would then make the decision to hire. If there were disciplinary issues, [] Smail or [] Blum would discuss it with Judge Arner, and Judge Arner made all [disciplinary] decisions.

(Trial court op. at 2-5) (internal citations to the record omitted).

In May 2013, Blum obtained information that Bowser was golfing during the workday. Bowser initially denied the allegation. However, Bowser later admitted that he golfed on a few days, but maintained that he completed the required number of work hours. After reviewing Bowser's field notes, Blum discovered that on May 17, 2013, Bowser did not have any face-to-face contact with his juvenile supervisees and went golfing. On June 14, 2013, Judge Arner met with Bowser to "obtain his explanation why he went golfing twice when he was supposed to be working and visiting juveniles and why he lied to Deputy Director Blum about it." *Id.* at 8. During the meeting, Bowser stated that he had an obsession with golf, had lied to Blum, and

3

had violated policy by not seeking permission to golf or indicating in his schedule that he was going to golf. *Id.* at 4-8.

On June 26, 2013, Bowser, then 54 years old, was terminated and issued a letter stating that his actions violated the UJS Code of Conduct for Employees by "making false official statements and abusing Court time and resources." *Id.* at 9. The termination letter was signed by President Judge Arner and Trisha Douglas, Human Resources Director of the County. The letter was typed on the CCP letterhead and specifically cited Judge Arner's authority to terminate court-appointed employees. *Id.* Sometime prior to his termination, Bowser overheard Smail comment to one of the secretaries, "Wouldn't it be nice to get rid of these old POs [probation officers] and get some young, muscular POs working here?" Reproduced Record (R.R.) at 426a.

At the time of his termination, Bowser occupied the position of Intensive Probationary Officer, but the position was eliminated after his termination due to lack of funding. On August 14, 2013, Judge Arner hired a 24-year-old male to fill a vacant position in the juvenile probation office; on June 25, 2014, Judge Arner hired a 45-year-old male as an Adult Probation Officer; and, on December 2, 2014, Judge Arner hired a 25-year-old male as an Adult Probation Officer. (Trial court op. at 9-10.)

By order dated April 25, 2018, the trial court granted the County's motion for summary judgment. Thereafter, Bowser filed a notice of appeal with this Court, and the trial court directed him to file a concise statement of errors complained of on appeal in accordance with Pennsylvania Rule of Appellate Procedure (Pa.R.A.P.) 1925(b). Bowser complied and alleged in his statement that the trial court erred as a matter of law in concluding that (1) the County was not an employer or joint employer for purposes of the PHRA; (2) the County articulated a legitimate, nondiscriminatory reason for terminating him; and (3) Bowser failed to provide sufficient evidence to

4

create a jury issue that the reason for the termination was pretextual. R.R. at 593a-608a.

In its Pa.R.A.P. 1925(a) opinion, the trial court concluded that Bowser was employed solely by the CCP and that the County could not be considered a joint employer. In so determining, the trial court noted that the County did not have the authority to hire, discipline, or terminate Bowser and it did not participate in the day-to-day operations or supervision of the Probation Office. The trial court, therefore, found that Bowser did not possess a cognizable claim against the County under the PHRA. (Trial court op. at 11-16.)

The trial court further concluded that, even if the County was an employer subject to liability under the PHRA, it had a legitimate basis to terminate Bowser. For support, the trial court quoted language from the termination letter, "[Bowser's] violations include using County vehicles to go golfing and then lying to [his] supervisor about it, golfing with staff of a [juvenile] placement facility and thereby giving an appearance of impropriety, and not accounting accurately for [his] time." *Id.* at 18.

Lastly, the trial court concluded that Bowser failed to submit sufficient evidence to demonstrate that the County's proffered reasons were a pretext for age discrimination. The trial court found that there was no evidence of record that would permit a fact-finder to disbelieve the reasons for termination because Bowser admitted that he "golfed during work hours, lied to his supervisor, and golfed with an employee of one of the placement facilities where at least one of his supervisees was located." *Id.* at 19. The trial court also noted that the younger individuals who were hired to work in the juvenile probation department were not treated more favorably by Judge Arner when making disciplinary and termination decisions. According to the trial court, this was "evidenced by the fact that [the 24-year-old employee] was subject to

5

an investigation for misuse of his gas account," "was suspended without pay," and "resigned prior to the investigation being completed," and the fact that the 25-year-old employee "was terminated by Judge Arner following an allegation of failing to answer on-call pages." *Id.* at 20. With respect to the other employee, a 45-year-old, the trial court observed that he was over 40 years old at the time of hiring and fell within the protected class covered by the PHRA. *Id.*

Bowser filed a notice of appeal with this Court.[2]

## Discussion

Bowser first contends that the trial court erred in concluding that he was not an employee of the County. Relying principally on *Graves v. Lowery*, 117 F.3d 723 (3d Cir. 1997), Bowser cites facts that he posits are adequate to support a co-employment or joint employer relationship with the County. More specifically, Bowser points to the facts that the County funded his position; was the sole employer listed on his pay stubs, W-2 statement, and W-4 Form; issued a check after his termination to compensate him for unused benefits; issued and signed the annual statements concerning his accrued benefits; and had control over the Probation Office by exercising budgetary power and, in one instance, eliminating a positon in the department. Bowser also highlights the facts that the County approved the decision to hire him; he participated in the County's pension plan under a CBA; he used the County's equipment, including vehicles and cell phones, to perform his duties; and his termination letter stated that he was being terminated from County employment.

---

[2] "Our standard of review of the grant of summary judgment is de novo and our scope of review is plenary." *Pyeritz v. Commonwealth*, 32 A.3d 687, 692 (Pa. 2011). Summary judgment is appropriate only in those cases where the record clearly demonstrates that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Atcovitz v. Gulph Mills Tennis Club, Inc.*, 812 A.2d 1218, 1221-22 (Pa. 2002).

In pertinent part, section 4(b) of the PHRA defines the term "employer" to include "the Commonwealth or any political subdivision or board, department, [or] commission[.]" 43 P.S. §954(b). Pursuant to the PHRA, an "employer" may incur liability for an unlawful discriminatory practice such as discharging an employee on the basis of age, which is denoted by statute to mean any person who is 40 years of age or older. *See* section 5(a) of PHRA, 43 P.S. §955(a); *Leibensperger v. Carpenter Technologies, Inc.*, 152 A.3d 1066, 1074 (Pa. Cmwlth. 2016) (en banc); *Nethken v. Commonwealth*, 885 A.2d 1116, 1118 n.2 (Pa. Cmwlth. 2005). For liability to be imposed against a governmental entity, that entity must first qualify as an "employer" of the complainant and, depending on the circumstances of a particular case, it is possible that there may be more than one employer. *See, e.g.*, *Nethken*, 885 A.2d at 1119; *Graves*, 117 F.3d at 727-29; *Kemether v. Pennsylvania Interscholastic Athletic Association*, 15 F. Supp. 2d 740, 762 (E.D. Pa. 1998).

This Court has held that a juvenile probation officer is a judicial officer and employee employed by a court of common pleas. *L.J.S. v. State Ethics Commission*, 744 A.2d 798, 802 (Pa. Cmwlth. 2000); *see Ward v. Potteiger*, 142 A.3d 139, 144 n.8 (Pa. Cmwlth. 2016) ("Article [V], Section 1 of the Pennsylvania Constitution vests the Commonwealth's judicial power 'in a unified judicial system consisting of the . . . courts of common pleas[.]' Pa. Const. art. [V], §1. A county's adult probation and parole office is considered an arm of the trial court, rather than the prison system, and thus, the probation department operates under the common pleas court's authority."); *McBride v. O'Brien* (W.D. Pa., No. 14-1129, filed September 3, 2015) (unreported), slip op. at 12, 2015 U.S. Dist. LEXIS 117800, at **20-21 ("A county probation department operates under the authority of the court. The courts of common pleas in Pennsylvania delegate authority to county probation officers to detain

defendants who violate probation."); *see also County of Lehigh v. Pennsylvania Labor Relations Board*, 489 A.2d 1325, 1327 (Pa. 1985) ("Since the court has the inherent right to hire, discharge and supervise, an employer-employee relationship exists by definition between the judges and their appointees.").

In *Renner v. Court of Common Pleas of Lehigh County*, 195 A.3d 1070 (Pa. Cmwlth. 2018) (en banc), we concluded that because a court of common pleas is a part of the judicial branch of government, "it is not subject to the PHRA" and, therefore, a probation officer cannot maintain an action against the court as an employer under the PHRA. *Id.* at 1078. The rationale for our holding was based on the doctrine of separation of powers.[3] *Id.* at 1077-78; *see also Scrip v. Seneca*, 191 A.3d 917, 927 (Pa. Cmwlth. 2018) (en banc) (concluding that if the claim asserted by a juvenile probation officer under the Whistleblower Law[4] could be actionable against the judiciary, this "would be an affront to the separation of powers"); *Thomas v. Grimm*, 155 A.3d 128, 137-38 (Pa. Cmwlth. 2017). Pursuant to the tripartite structure of our state government, "the discharge of a judicial employee is a judicial power vested by [the Pennsylvania] Constitution in the courts. That power may not, consistent with the constitutional doctrine of separation of powers, be policed, encroached upon, or

---

[3] "The Constitution of Pennsylvania establishes three separate, equal and independent branches of government: the General Assembly, the Executive and the Judiciary. Each branch is clothed with certain exclusive rights and powers. Neither the General Assembly nor the executive branch of government, acting through an administrative agency may constitutionally infringe upon the powers or duties of the [county] judiciary." *L.J.S.*, 744 A.2d at 800. "Among the powers granted to the judiciary is the responsibility of the Supreme Court to 'exercise general supervisory and administrative authority' and 'prescribe general rules governing practice, procedure and the conduct' for the courts of the unified judicial system. Pa. Const. art. 5, §10(a), (c). . . . Our Supreme Court has held that in order to carry out these powers, courts must have exclusive authority to select, discharge and supervise court employees." *Russo v. Allegheny County*, 125 A.3d 113, 119 (Pa. Cmwlth. 2015).

[4] Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§1421-1428.

diminished by another branch of government." *Beckert v. American Federation of State, County and Municipal Employees*, 425 A.2d 859, 862-63 (Pa. Cmwlth. 1981), *aff'd*, 459 A.2d 756 (Pa. 1983).[5]

Nonetheless, while the courts of common pleas are considered the employers of judicial personnel, including probation officers, "this fact does not preclude the possibility that a county may share co-employer or joint employer status with the courts." *Graves*, 117 F.3d at 727; *see Nethken*, 885 A.2d at 1119 ("[L]iability under the PHRA can be visited upon multiple entities based on different acts. There is no basis to conclude that only one entity can be liable for discrimination as a matter of law."). In other words, the interrelationship between these two separate entities may be such that both are regarded as "employers" of the same individual, and the object of the joint employment doctrine is to determine whether a putative employer "exercise[s] significant control over the same employee." *Graves*, 117 F.3d at 727.[6]

---

[5] Notably, through a series of statutes, "the General Assembly intended to create a legislative scheme in which funding of the various judicial districts was primarily a responsibility of the counties, and that these responsibilities include the funding of salaries, services and accommodations for the judicial system." *County of Allegheny v. Commonwealth*, 534 A.2d 760, 763 (Pa. 1987). However, "[t]he fact that [judicial] employees are paid by the county does not alter the court's employer status." *County of Lehigh v. Pennsylvania Labor Relations Board*, 489 A.2d 1325, 1327 (Pa. 1985); *see also Braden v. County of Washington*, 749 F. Supp. 2d 299, 311-12 (W.D. Pa. 2010) ("[A] county is compelled by state law to fund [court employees'] positions, and cannot avoid doing so even if it wanted . . . ."). Further, as a result of statutory mandate, the county commissioners are the exclusive representative of management in representation proceedings and collective bargaining involving court employees paid from county funds. "This exclusive authority, however, does not diminish the right of judges to 'hire, discharge, and supervise' these employees." *Ellenbogen v. County of Allegheny*, 388 A.2d 730, 735 (Pa. 1978).

[6] *Graves* involved a claim made by several former clerks (Clerks) who worked for a magisterial district judge and commenced a sex discrimination suit against Dauphin County under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§2000e-2000e-17. On appeal, the United States Court of Appeals for the Third Circuit declined to discount the possibility that Dauphin County was not a joint employer. In rendering its determination, the Third Circuit emphasized that the Clerks

Our case law appears to be scant (if not nonexistent) with respect to the legal issue of a county being a joint employer of a judicial employee, especially in the context of discrimination claims. However, the joint employment test has been applied in discrimination cases brought under Title VII, the Age Discrimination in Employment Act (ADEA),[7] the Americans with Disabilities Act,[8] and the Family Medical Leave Act (FMLA).[9] *See, e.g.*, *Swallows v. Barnes & Noble Book Stores*, 128 F.3d 990, 992 n.2 (6th Cir. 1997); *Astrowsky v. First Portland Mortgage Corp.*, 887 F. Supp. 332, 336-37 (D. Me. 1995). Further, discrimination claims brought under the PHRA are generally analyzed in the same manner as its federal counterparts. *See Kroptavich v. Pennsylvania Power and Light Company*, 795 A.2d 1048, 1055-56 (Pa. Super. 2002); *see also Hoy v. Borough of Cochranton* (Pa. Cmwlth., No. 1005 C.D.

---

asserted that the County "exercised the requisite control over the daily employment activities of the Clerks to incur liability as a co-employer," 117 F.3d at 728, by alleging "that they were covered by the County's personnel policies, that they were told that they were County employees, that the County investigated their allegation of sexual harassment, that they were subject to termination and/or reinstatement by the County and that two of them were hired by the County." *Id.* at 729. At the same time, the Third Circuit acknowledged that the case was "unique," *id.* at 727, and concluded that it should not have been dismissed by the district court on a motion to dismiss:

> We decline to speculate as to whether the Clerks will ultimately succeed in their claim against Dauphin County. We merely note that the employment relationship between the Clerks and the County was sufficiently ambiguous that the Clerks' claim against the County should not have been dismissed at the pleading stage. Indeed, the County's own actions indicate that even it was unsure about its responsibilities to the Clerks.

*Id.* at 729.

[7] 29 U.S.C. §§621-634.

[8] 42 U.S.C. §§12101-12213.

[9] 29 U.S.C. §§2601-2654.

10

2015, filed December 21, 2016) (unreported), slip op. at 7 (stating that "claims brought under the PHRA are analyzed under the same standards as their federal counterparts and, therefore, Pennsylvania courts use federal interpretations of the federal anti-discrimination statutes to guide and inform our interpretations of the PHRA").

In *Braden v. County of Washington* (W.D. Pa., No. 08-574, filed April 23, 2010) (unreported), the Federal District Court for the Western District of Pennsylvania addressed a factual pattern that is analogous to the one currently before this Court. In that case, the plaintiff commenced suit under the FMLA against the County of Washington (Washington County) after she was discharged following a leave of absence due to a medical condition. The plaintiff alleged that she was jointly employed by both Washington County and the Court of Common Pleas of Washington County (County Court).

Confronted with a motion for summary judgment, the federal district court set forth the relevant, uncontested facts as follows:

> The focus is on the relationship between [the County] and the Domestic Relations Section (DRS) of the County Court, vis-a-vis [the plaintiff's] employment . . . .
>
> [The plaintiff] submitted to the County Human Resources [HR] Office an application for employment with the [County Court]. [The plaintiff] interviewed with the Director of DRS, and a County HR employee was present at the interview. [The plaintiff] was hired in a position at DRS. The Director of DRS told [the plaintiff] that she was being employed in a court-related office, and that she was a Washington County employee. In the DRS, she was supervised by DRS Deputy Director, who was supervised by the DRS Director, who was in turn supervised by the Court Administrator, who was in turn supervised by the DRS Judge, who was in turn supervised by the President Judge of the Court of Common Pleas. The President Judge of the County Court has the authority to hire and fire people.

11

[The plaintiff] received her day-to-day work assignments from the Director or Deputy Director of DRS. The County Court adopted, followed, or borrowed certain policies of [Washington] County, such as those relating to aspects of vacation, sick leave, and the FMLA, and DRS has certain of its own policies, such as a dress code and political activity policy. Salary increases were approved by [Washington County], and [Washington County] paid [the plaintiff's] salary and provided her employee benefits. There is no evidence that [Washington County] made, as opposed to approved, decisions about [the plaintiff's] compensation.

In October of 2007, [the plaintiff] received a written warning and a three-day suspension for missing work. The DRS Director told [Washington County's] HR Director that they were going to issue a written warning, and asked the opinion of the HR Director, who recommended the written warning. Due to [the plaintiff's] continued absenteeism, the DRS Director and Deputy Director recommended that the Deputy Court Administrator terminate [the plaintiff]. The Deputy Court Administrator also talked to [Washington County's] HR Director, who recommended that the Deputy Court Administrator fire [the plaintiff]. The Deputy Court Administrator, DRS Director, and DRS Deputy Director met with [the plaintiff] to discuss her absences, and whether she should be terminated. The decision to terminate [the plaintiff] was made by the Deputy Court Administrator. The Deputy Court Administrator then fired [the plaintiff] in 2007.

*Id.*, slip op. at __, 2010 U.S. Dist. LEXIS 40084, at **3-4.

In opposition to the motion for summary judgment, the plaintiff argued that she adduced sufficient evidence to support a finding of joint employment. In particular, the plaintiff cited the facts that Washington County was involved in payroll and benefits administration, was present during the hiring process, and provided support to court-related employees via its HR department. The plaintiff further relied on the facts that the DRS followed or adopted certain policies of Washington County, and Washington County recommended that she be suspended, written up, and fired.

12

In rejecting the plaintiff's position, the federal district court offered the following analysis and rationale:

> In [] *Spears v. Choctaw County Commissioners* [(S.D. Ala., No. 07-0275-CG-M, filed July 30, 2009), 2009 U.S. Dist. LEXIS 66037], the court considered similar facts and determined that there was no joint employment relationship . . . . In that case, absent involvement in the employee's daily activities and the power to hire or fire the employee, a county was not a joint employer, even though the county handled administrative functions regarding payroll and benefits; maintained employment records; and could approve or disapprove of a decision to hire or fire. *Id.*, at \*\*33-34. In reaching its conclusion, the court observed a lack of precedent "in which a court decided that an entity that was completely uninvolved in the day-to-day activities of a plaintiff . . . was an 'employer' based only on its involvement in setting salary classifications and handling benefits and payroll." *Id.* at \*33. Similarly, in [*Moldenhauer v. Tazewell-Pekin Consolidated Communications Center*, 536 F.3d 640 (7th Cir. 2008)], the court determined that there was no joint employment relationship, although the plaintiff was considered an employee of the purported joint employer for purposes of payroll, worker's compensation, retirement benefits, and was listed as such on her W-2 forms. *Id.* at 645-46.
>
> Here, there is no evidence that [Washington County] maintained direct or indirect control over [the plaintiff's] work schedules or working conditions, determined (rather than approved) the rate and method of her compensation, or had the power to determine, or take action, to hire or fire her. There is no evidence that [the plaintiff] or her supervisors reported to, or received direction or supervision from, [Washington County]. To the contrary, the "chain of command" ended at the President Judge of the County Court. It is also undisputed that the DRS Deputy Director and Director gave [the plaintiff] her work assignments. The evidence shows that the DRS or [County] Court adopted certain of [Washington County's] policies; there is no evidence that [Washington County] was empowered to

impose or enforce those policies against DRS workers. DRS supervisors conducted regular evaluations of [the plaintiff's] work. In sum, there is absolutely no evidence that [Washington County] had any involvement in or control over [the plaintiff's] day-to-day work activities, or controlled the essential details of her employment. As the case law indicates, funding, and salary and benefits handling, are relevant but not enough.

[The plaintiff] also relies on the fact that she was told and otherwise led to believe that she was [Washington County's] employee—for example, her employment application read, "Washington County" at the top. Joint employer status, however, does not turn on the perceptions of the employee. Similarly, providing human resource support is akin to an administrative function, and is not an exercise of the requisite control.

*Braden*, slip op. at __, 2010 U.S. Dist. LEXIS 40084, at **23-27 (footnotes and some internal citations omitted).

Accordingly, the federal district court in *Braden* granted summary judgment in favor of Washington County.

On facts that are substantially similar to those presented in *Braden*, two other federal district courts have also dismissed plaintiffs' discrimination claims on summary judgment, concluding that the plaintiffs were working as judicial employees and failed to establish joint employment relationships with the counties. In *Caso v. Luzerne County* (M.D. Pa., No. 3:13-CV-02253, filed April 28, 2015) (unreported), the court granted summary judgment predominately for two reasons: First, "while the County funds the Probation Department and the CBA sets forth the terms for judicial employee compensation and benefits, the CBA also makes clear that the Court of Common Pleas 'retains the sole and exclusive right to discharge, demote, suspend or discipline Employees'"; and Second, "the Court supervised the day-to-day operations of the Probation Department" and "the Probation Director performed his duties under

14

the supervision of the Court." *Id.*, slip op. at __, 2015 U.S. Dist. LEXIS 55543, at **31-32. In *Withers v. Johnson* (E.D. Ark., No. 4:11-cv-669-DPM, filed July 1, 2013) (unreported), the court granted summary judgment because,

> Pulaski County couldn't hire and fire [the plaintiff] or supervise his schedule. Those powers, [the plaintiff] agrees, were [Judge] Johnson's alone. [The plaintiff] has offered no evidence that the County controlled his employment conditions, exercised day-to-day control over him, or managed the details of his work. The County did handle his payroll and benefits, but purely administrative tasks like this are not enough to create a joint-employment relationship.

*Id.*, slip op. at ___, 2013 U.S. Dist. LEXIS 92800, at **3-4.

Here, Bowser advances arguments that, in overwhelming part, have been considered and disavowed by the federal district courts in *Braden*, *Caso*, and *Withers*.[10] In this case, the County funded Bowser's position and made budgetary decisions related to the Probation Office, was listed as the employer on his W-2 statement and W-4 Form, issued Bowser paychecks and unused compensation checks, and was the bargaining representative to the CBA to which Bowser was a member. However, as in *Braden* and *Caso*, the County's duty and role with respect to issues such as funding, salary, benefits, and collective bargaining are simply not enough to establish a joint employer relationship. In Pennsylvania, the General Assembly has mandated that the counties fund the courts of common pleas, including the salaries of judicial employees, *see County of Allegheny v. Commonwealth*, 534 A.2d 760, 763 (Pa. 1987); however, this "does not alter the court's employer status." *County of Lehigh*, 489 A.2d at 1327.

---

[10] Although these decisions are not binding upon this Court, we find them to be instructive and persuasive in resolving the legal issue at hand. *See Nagle v. Trueblue, Inc.*, 148 A.3d 946, 959 n.15 (Pa. Cmwlth. 2016) ("Generally, decisions of federal district courts and courts of appeals are not binding on this Court . . . but they may have persuasive value. Unreported federal court decisions may also have persuasive value.") (internal quotation marks and citation omitted).

15

Although the General Assembly designated the county commissioners as the exclusive representative of management in representation proceedings and collective bargaining involving court employees, this authority "does not diminish the right of judges to 'hire, discharge, and supervise' these employees." *County of Allegheny*, 388 A.2d at 735. In fact, the CBA in this case expressly stated that, "The parties acknowledge and agree that as Court[-]Appointed employees, the President Judge . . . has the authority to demote, suspend and discharge all probation officers and that such action by the President Judge is not subject to the grievance procedures contained in this Agreement." R.R. at 487a.

While the County provided Bowser with equipment, akin to *Braden* and *Withers*, human resource and administrative support of this nature do not militate toward a finding of a joint employment relationship. Further, the termination letter stated that Bowser was "hereby terminated from County employment as a regular full time Probation Officer." R.R. at 486a. Nonetheless, the termination letter was typed on CCP letterhead, was signed by Judge Arner, and cited Judge Arner's authority to discharge judicial employees. R.R. at 485a-86a. In any event, under *Braden*, an employee's perceptions based on correspondence that describes a county as an employer is marginally relevant.

Moreover, although the County approved the decision to hire Bowser, the actual decision to hire was made solely by Judge Alexander. The President Judge in effect at the time handled all discipline, hiring, and termination decisions of probation officers, who were subject to the UJS Code of Conduct for Employees. Equally significant, there is no evidence that the County exercised (or had the right to exercise) control over the day-to-day operations of the Probation Office or direct the activities of which Bowser was to complete and/or the manner in which he was to conduct those

activities and his job duties. *See Borough of Emmaus v. Pennsylvania Labor Relations Board*, 156 A.3d 384, 391 (Pa. Cmwlth. 2017) (en banc) ("[A]n extremely important component of any employer-employee relationship is the employer's right to direct the work to be done and the manner in which the work is done." (internal quotation marks omitted)). Rather, all the evidence demonstrates that the Probation Office, through a chain of command that worked its way through the hierarchy of judicial employees, ultimately operated under the final supervision and authority of the President Judge of the CCP, the "head boss" of the Probation Office. (Trial court op. at 2.) Therefore, on this record, we conclude that, pursuant to the persuasive authority of *Braden*, *Caso*, and *Withers*, the trial court did not err in granting summary judgment in favor of the County.

Accordingly, we affirm the order of the trial court. Because our affirmance is based on the ground that the County is not an employer for purposes of the PHRA, we need not address Bowser's remaining arguments concerning pretext.[11]

_____
PATRICIA A. McCULLOUGH, Judge

---

[11] In this regard, Bowser contends that, regardless of the time he spent golfing, he worked the amount of required hours and did not create an appearance of impropriety by golfing with a counselor while discussing the progress of a client. Bowser asserts that his infractions were seized upon as an opportunity to discharge him and he points to the age animus statement made by Smail, her responsibility to screen-out and refer applicants to Judge Arner for a hiring decision, and her role in discussing disciplinary matters. Bowser further contends that the 45-year-old, even though over the age of 40 when he was hired, was still 11 years younger than Bowser.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Larry Bowser,                          :
              Appellant               :
                                      :   No.  653 C.D. 2018
       v.                             :
                                      :
Clarion County                        :

## ***ORDER***

AND NOW, this 18th day of March, 2019, the April 25, 2018 order of the Court of Common Pleas of Clarion County is affirmed.

_____
PATRICIA A. McCULLOUGH, Judge